**HUBACH, a Minor v COLE**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 17023. Decided May 25, 1939

McConnnell, Blackmore & Cory, Cleveland; Dan Houck, Esq., for Plaintiff-Appellee.

McKeehan, Merrick, Arter & Stewart, Cleveland, for Defendant-Appellant.

## OPINION

By MATTHEWS, J.

This is an appeal on questions of law from a judgment for Ten Thousand Dollars ($10,000.00) in favor of the plaintiff against the defendant, a physician, for malpractice. This judgment was rendered at a second trial. At the first trial, the court sustained the defendant's motion for an instructed verdict and later entered judgment on that verdict for the defendant. This judgment was affirmed by the Court of Appeals. A motion to certify having been granted by the Supreme Court, that court on the final hearing reversed the judgment of the Court of Appeals and the Court of Common Pleas and remanded the case for a new trial. The opinion of the Supreme Court is found in **133 Oh St 137**. The basis of the decision is that the record then before the court disclosed substantial evidence in support of the plaintiff's averments, and that, therefore, the court erred in arresting the case from the jury at the close of the plaintiff's evidence.

At the second trial the record of which is the one now before the court for review, the issues of fact were submitted to the jury, which found for the plaintiff in the sum of Ten Thousand Dollars ($10,000.00), the motions of the defendant for judgment notwithstanding the verdict and for a new trial were overruled, and judgment rendered on the verdict for the plaintiff.

The plaintiff, in 1922, when a child about four years old, developed a pink mark upon her forehead. Dr. Barney diagnosed it as a birthmark, and suggested its removal by defendant. She was taken to the defendant, a physician specializing in skin diseases, and he also diagnosed the condition as a birthmark, and suggested treatment by the application of radium, and, according to the plaintiff's evidence, stated that he could or would remove it in that way. The radium plaque was applied on that occasion, and after the lapse of an interval, the length of which is in dispute, it was applied a second time.

When the plaintiff was brought to the defendant the first time, this pink mark started on the lower part of the forehead, just above the nose and extended upward about one inch. It was about three-fourths of an inch wide. During the next year or year and one-half, this condition spread upward causing a strip of her hair to fall out, so that there was left a bald path about an inch wide, extending back to the crown of her head. The frontal bones were affected, causing a depression in her forehead.

This action was filed in November, 1934, plaintiff charging that the defendant had failed to exercise the degree of care and skill which he had held himself out as possessing, and that the plaintiff's condition was the direct result of such failure.

In the appellee's brief it is asserted that there was a failure to meet the professional standard of care and skill in two respects:

(1) In improperly diagnosing the ailment as a birthmark, when in fact it was scleroderma, and

(2) in applying the radium plaque the second time too soon after the first application.

70

We will examine the evidence relating to these claims and the specific errors assigned.

1. Before the plaintiff was taken to the defendant she had been seen by two physicians, both of whom had diagnosed this condition as a birthmark. Furthermore, the evidence is overwhelming, if not uncontradicted, that a birthmark and a discoloration resulting from scleroderma, the final diagnosis, are indistinguishable in appearance, or by any other known test, and only differ in the manner of their development. We are of the opinion that the record discloses no evidence of negligence in the making of this diagnosis.

Furthermore, the record is clear that no harm resulted to the plaintiff from such failure. There is no evidence that the application of radium to either a birthmark or scleroderma would have harmful effects unless the application was excessive or too frequent. That brings us to the second claim.

2. Does the record show that the two applications of the radium were too close together?

It is undisputed that applications two months apart would not be too frequent and would be good practice. The position of the plaintiff is that these applications were only two weeks apart, and that this was improper or malpractice, and, as a result, the skin and bone of the forehead were injured. It is, therefore, vital to the position of the plaintiff that sufficient evidence be contained in the record showing the two applications within the shorter period of time. Now what does the record show?

Erwin W. Hubach, the plaintiff's father, testified that the last treatment was in November, 1922, and that the treatments were only two weeks apart, but in the original petition in this case he swore that the plaintiff was taken to defendant in the spring of 1922 and that the first treatment took place then. This same allegation was made in a companion suit against the defendant for damages sustained by him on account of the alleged malpractice on his daughter. It was reaffirmed under positive oath in a deposition in this case in response to questions that could have left no doubt in the mind of the defendant as to the importance attached to the subject by defendant's counsel. It was not until a week before the trial that the plaintiff formally changed the time from the spring to the fall of 1922, although the inuendo is that it was charged at the first trial which took place in 1936. Now the witness gave two reasons for the change in his testimony. He said that his memory was refreshed by a picture of the plaintiff taken in the summer of 1922, showing her with her hair pinned back. The other prod to his memory is a check dated December 8th, 1922, which he said was given in payment of the second treatment. Now while the check undoubtedly showed that the second treatment took place prior to that date and perhaps would lead to the conclusion that it occurred shortly before, and would therefore disclose a motive on his part for postponing the date of the first treatment, we are at an utter loss to understand how that incident or the picture have any tendency whatsoever to bring to mind the date of a treatment that occurred fourteen or fifteen years previously, or of furnishing any substantial foundation for a revision of the repeated statement to the contrary.

Mrs. Bruce, the plaintiff's grandmother, went with the plaintiff and her father on the first visit to the defendant's office. She testified that it was in the fall, in November, and that the defendant told them to come back in two weeks and that she went back with them at the end of the two weeks period. In January, 1936, she testified that the first treatment was in the spring of 1922. She gave the same reasons for changing her testimony, as those given by the plaintiff's father. The inadequacy of the explanation for the change has already been stated.

The only other witness on this subject called by the plaintiff was the plaintiff's mother, who said she noticed

the mark on the forehead of plaintiff in the spring (in March) and, on the advice of the family physician, Dr. Wyckoff—they pinned the plaintiff's hair back, so that she would get the benefit of the sun on the spot during the summer of 1922, and that it was not until the fall that the plaintiff was taken to the defendant, and that the plaintiff was taken back in exactly two weeks thereafter. Dr. Wyckoff, although available, was not called as a witness. The only record to which the witness referred to refresh her recollection was the check and check stub of Dec. 8, 1922, which were used to pay for the second treatment. How it could refresh recollection of the date of the first treatment is not apparent.

As against this testimony that the first visit was in the fall, we have the original statements of Mr. Hubach and Mrs. Bruce, and the testimony of the defendant, whose recollection was refreshed by the day by day record which he kept. This record clearly shows that the first application of the radium was on the 21st day of July, 1922, and it is equally clear that the second treatment was on October 20, 1922. It is true that the plaintiff sought to discredit this record by developing that the page or card had been reduced in size by cutting the edge on which the dates were placed, but this change, which it was explained, was made to fit the card to a new filing case, still left sufficient original dates to identify the dates of treatment as genuine original dates made at or about the time in the regular course.

It is impossible for us to set out all the circumstances, but the foregoing, together with others, have led us to the conclusion that the manifest weight of the evidence is that the initial application of the radium was on July 21st, 1922, and the other one on October 20, 1922, approximately three months later.

According to the plaintiff's mother, she concluded in 1923 that the defendant had burned her daughter and accused him of it. While the statute of limitations would not run against the plaintiff during her minority, we are, nevertheless, of the opinion that a just appraisal of the testimony of her custodians requires the court to consider the fact that with full knowledge of the facts, they delayed filing this action for twelve years. Her custodians were adults. They had the power to institute this action during all those years. They knew the facts. Why such delay? Aggrieved persons ordinarily do not postpone asserting rights so long. We consider that in reaching our conclusion.

3. Assuming that the applications of radium were applied only two weeks apart, as the father, mother and grandmother testified at this trial, we are still of the opinion that the manifest weight of the evidence proves that no harm resulted to the plaintiff therefrom. The evidence is overwhelming that applications of radium of the dosage used, two weeks apart, would have been in accordance with the standards of good practice both for birthmark and for scleroderma. Whether it would have effected a cure is dependent upon circumstances, but it is clear that no harm would result to the birthmark, and that if it was scleroderma it would progress just as the condition of the plaintiff did with the appearance manifested in her case.

4. It appears that at the first trial, Dr. LaRocco and Dr. Cummer were called by the plaintiff, but notwithstanding, they gave it as their opinion at that time that the plaintiff suffered from scleroderma and not radium burn. Plaintiff's counsel asked the court to permit him to question them as to an opinion held by them at a prior time. This, the court refused to do. The Supreme Court held that this was not error,—that it is the final conclusion of an expert that is competent.

At the second trial, which is the one now under review, plaintiff's counsel repeatedly tried to get before the jury the alleged former opinions of these physicians by questioning other witnesses on the subject. The trial court immediately sustained objection to it,

but, notwithstanding, counsel persisted. He knew that the Supreme Court had denounced the evidence as incompetent in this case, and should have known that having propounded the question once, and thereby saved the point, it was unnecessary for him to repeat it with every witness called to the stand. There could have been only one purpose, and that was a deliberate attempt to substitute for incompetent evidence the effect of repetitious questions upon the minds of the jurors. That this is misconduct is clear from all the cases.

Hayes v Smith, 62 Oh St 161.
Cleveland, Painesville & Eastern Railroad Co. v Pritzchan, 69 Oh St 438.
Toledo, St. Louis & Western Railroad v Burr & Jeakle, 82 Oh St 129.

It is clear that this misconduct was prejudicial in itself. █ Counsel, however, removed all doubt about it by predicating a part of his argument to the jury on this inuendo substituted for evidence. He did all he could to guarantee that the jury would carry the thought with them into the jury room, and have it there when they were deliberating. It was effective, erroneous and prejudicial.

5. What has been said about the conduct of counsel in respect to the alleged prior opinions of Dr. LaRocco and Dr. Cummer is equally applicable to his conduct in creating the impression by questions that Dr. Cummer had taken a picture of plaintiff to illustrate a radium burn. There was no evidence to support it, but, notwithstanding, he asserted it in his argument as though it were a proven fact.

And in the same way, by reference to medical text books, not in evidence, and by unfounded assertions that large sums of money had been spent in the defense, and by other unfounded inferences, an atmosphere must have been created in which it was impossible for the jury to have distinguished between actual evidence submitted to them for their analysis and these non-evidential assertions and inuendoes.

It needs no elaborate citation of authorities to show that █ this is such misconduct on the part of counsel as will invalidate the result of any trial.

6. Inasmuch as this case must be remanded for a new trial, we do not deem it profitable to consider carefully whether the issues of fact upon which there was evidence were stated with sufficient clarity. Of course, the evidence may not be the same at the next trial. Suffice it to say that the issues submitted should be limited to those alleged upon which there is substantial evidence.

7. The errors of law, pointed out by the appellant, in the charge are undoubtedly inaccuracies, but we are of the opinion that they would not be sufficiently prejudicial to justify in themselves a reversal.

Counsel urges that there is no substantial evidence in support of the plaintiff's case. While we █ are clearly of the opinion that the judgment is manifestly against the weight of the evidence, we cannot conclude that the record is so devoid of substantive evidence as to justify a final judgment for the defendant.

We find no other prejudicial error in the record.

For these reasons, the judgment is reversed and the cause remanded for further proceedings according to law.

HAMILTON, PJ. & ROSS, J, concur.